

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 13, 1968

Hon. John Kinross-Wright
Commissioner, Texas Department
  of Mental Health and Mental
  Retardation
Box S, Capitol Station
Austin, Texas  78711

Opinion No. M- 314

Re:  Whether under Article
     5547-201-204, inclusive,
     Vernon's Civil Statutes,
     as amended, the Texas
     Department of Mental
     Health and Mental Re-
     tardation may legally
     impose the requirement
     on community health cen-
     ters to match with local
     revenue on a fifty-fifty
     basis each grant-in-aid
     as a condition of eligi-
     bility for such grant-
     in-aid?

Dear Dr. Kinross-Wright:

        You have requested our opinion concerning the legality,
under Article 5547 - 201-204, inclusive, Vernon's Civil Statutes,
of the Department's policy of requiring community mental health
centers, community retardation centers, and combined mental health
and retardation centers established by local agencies under au-
thority of the above Act to match with local revenue on a fifty-
fifty basis each grant-in-aid as a condition of eligibility
for such grant-in-aid.

        The pertinent parts of Article 5547 - 203, Vernon's
Civil Statutes, read as follows:

        "Section 3.01.  (a)  One or more cities,
    counties, hospital districts, school districts,
    rehabilitation districts, state-supported insti-
    tutions of higher education, and state-supported
    medical schools, or any combination of these,
    may cooperate, negotiate, and contract with each
    other through their governing bodies to establish
    and operate a community center.

-1529-

Hon. John Kinross-Wright, page 2 (M-314)

(b)  As used in this Act, a 'community center' may be:
(1)  a community mental health center, which provides mental health services; or
(2)  a community mental retardation center, which provides mental retardation services; or
(3)  a community mental health and mental retardation center, which provides mental health and mental retardation services.

"Section 3.10.  A community center may accept gifts, grants, and donations of money, personal property, and real property for use in the administration of its programs and services."

Article 5547 - 204, Vernon's Civil Statutes, concerning state grants-in-aid, reads as follows:

Plan

"Section 4.01.  As soon as possible after its establishment, a community center shall formulate and submit to the Department:
(1)  a copy of the written agreement between the participating local agencies;
(2)  a plan, within its projected financial, physical, and personnel resources, to develop and make available to the residents of the region a full range of effective mental health or mental retardation services, or both.

Eligibility for grants-in-aid

"Section 4.02.  A community center is eligible to receive state grants-in-aid if:
(1)  the population within the region served is 75,000 or more according to the last preceding federal census; provided, however, if the Commissioner determines that the purposes of this Act would be served by declaring a center serving a region of less than 75,000 persons eligible for grants-in-aid, then the center is eligible for grants-in-aid; and
(2)  it qualifies according to the rules of the Department.

Sec. 4.02 amended by Acts 1967, 60th Leg., p. 203, ch. 115, Sec. 1, emerg.eff. May 4, 1967.

### Rules to establish qualifications

"Section 4.03. (a) The Department shall make rules, consistent with the purposes, policies, principles, and standards provided by this Act, establishing the minimum standards relating to the amount, quality, kinds, and accessibility of services which must be provided by a community center in order to qualify it for state grants-in-aid.

(b) The Department shall make rules under which a newly established community center with a sound plan for the development of the full range of services may qualify for grants-in-aid although it does not presently qualify under Subsection (a) of this section.

(c) The Department shall hold hearings on all proposed rules under this section. Community centers and local agencies shall be given notice and an opportunity to testify. Delivery or publication of notice may be given in any form which is reasonably calculated to give actual notice.

### Grants-in-aid

"Section 4.04. The Department shall allocate to the eligible community centers the money appropriated to the Department for that purpose.

### Allocation

"Section 4.05. In determining the percentage of the total amount available to be allocated to each eligible community center, the Department shall give due consideration to the following factors:

(1) the population of the region served by the center;

(2) the socio-cultural and economic characteristics of the region;

(3) the rate of mental disorders and disabilities in the region as revealed by reliable statistics;

(4)  the ability or potential ability of the center to provide comprehensive services for all residents of the region; and
(5)  the quality of the center's services and the effectiveness of the services in terms of average cost per patient-stay and other relevant indices, or the potential quality and effectiveness of the services.  Acts 1965, 59th Leg., p. 165, ch. 67, Sec. 1, eff. Sept. 1, 1965."

Article 5547 - 203 provides the authority for local agencies to establish community mental health and retardation centers, and Article 5547 - 204 provides the means by which eligible community centers could receive state grants-in-aid.

Under Article 5547 - 204, in order to be eligible to receive a grant-in-aid, it is necessary for each community center to comply with certain requirements.

The initial requirement, as found in Section 4.01 (1) and (2), is that the center submit to the Department of Mental Health and Mental Retardation a copy of the written agreement between the participating local agencies if more than one local agency participates and a plan to develop and make available to the residents of the region a full range of effective mental health and/or mental retardation services.

The next requirement for eligibility, found in Section 4.02 (1), is that the population within the region served be 75,000 or more; however, if the Commissioner determines that the purposes of this Act would be served by declaring a center serving less than 75,000 persons eligible for grants-in-aid, then the center is eligible.

Also, under Section 4.02 (2), a center, to be eligible, must qualify according to the rules of the Department.  This does not appear to be a grant of general rule-making power, because in Section 4.03 (a),(b), and (c) the Act sets out "rules" to establish qualification.  The rule-making power set out in this Section does not appear to include the power to require "fifty-fifty matching."

Section 4.04 provides for grants-in-aid, and the clear intent of this Section of the Act seems to be that when community centers become eligible by complying with the requirements set out in Sections 4.01, 4.02, and 4.03, then the Department shall and must allocate to these centers the money appropriated

to the Department for that purpose.

Section 4.05 of the Act sets out certain definite guidelines for the Department to follow in determining the percentage of the total amount of money available which is to be allocated to each eligible community center.

From a careful reading of Article 5547 - 203-204, it would seem clear that it was the intent of the Legislature to place a mandatory obligation on the Department of Mental Health and Mental Retardation to allocate moneys to any community center meeting the requirements set out in the Act. If the Department of Mental Health and Mental Retardation were to impose an additional requirement to the effect that each center, regardless of its abilities to raise revenue and its specific needs and services, match the grant-in-aid on a fifty-fifty basis, the effect of such action would be tantamount to amending the original Act. If the Legislature had intended these funds to be distributed on such an arbitrary "fifty-fifty matching" basis, it would have undoubtedly included that requirement in the original Act. To impose such a requirement on every center would be an abuse of the discretion entrusted in the Department.

Furthermore, to require "fifty-fifty matching" as a qualification for any center to receive grants-in-aid under the Act could definitely have the effect of denying to certain low income communities, unable to raise local revenue to such extent, any of the benefits of the Act, an unreasonable result and one contrary to the manifest intention of the Legislature.

Therefore, we must necessarily conclude that it would be outside of the legislative intent of Article 5547 - 201-204, inclusive, to require community health and retardation centers to match with local revenue on a fifty-fifty basis each grant-in-aid as a condition of eligibility for such grant-in-aid.

## S U M M A R Y

Pursuant to Article 5547 - 201-204, inclusive, Vernon's Civil Statutes, as amended, the Texas Department of Mental Health and Mental Retardation may not legally impose an arbitrary requirement on all community mental health and mental retardation centers to match with local revenue on a fifty-fifty basis each grant-in-aid as a condition of eligibility for such grant-in-aid. The Department is required

to consider the statutory guidelines for each center in determining the amount of funds to be allocated and which shall be dependent upon consideration of the feasibility of the center's plan and participation under Section 4 of Article 5547 - 204.

Sincerely yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Charles Parrett
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
Jack Sparks
Jim Swearingen
Pat Cain
Ralph Rash

A. J. CARUBBI, JR.
Executive Assistant